UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEAN JOSEPH, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-516**<br>**REF: ALL CASES** |
| **FLUOR CORPORATION, ET AL.** | **SECTION "L" (5)** |

**ORDER & REASONS**

These consolidated cases involve the alleged malfunction of a gas stove, propane tank, and/or gas alarm that caused an explosion in a trailer provided to Ms. Jean Joseph by the Federal Emergency Management Agency ("FEMA") for temporary residence following Hurricane Katrina. Before the Court are four motions for leave to amend the various complaints and a premature motion to remand. The Court heard oral argument and took these motions under submission. For the following reasons, the Court now GRANTS three of the motions to amend and will REMAND these cases to state court because the addition of non-diverse parties to this litigation destroys complete diversity and federal jurisdiction does not otherwise exist.

**I.   BACKGROUND**

In the aftermath of Hurricane Katrina, FEMA embarked on an unprecedented relief effort in the Gulf South to provide affected residents with temporary housing. With few apartments, condominiums, and houses available for occupancy, FEMA had provided over 100,000 travel

1

trailers and mobile homes in Louisiana, Mississippi, and Alabama as of August 17, 2006.[1]  The majority of these are travel trailers located on residents' private property next to their damaged homes, although a number of group sites have also been established across the region.  One of the plaintiffs in these cases, Ms. Jean Joseph, received a travel trailer from FEMA and had it placed at 7730 Branch Street in New Orleans, Louisiana.

While FEMA has traditionally maintained a small inventory of temporary housing, following the active 2005 hurricane season the agency placed orders with a number of manufacturers to rapidly build additional units.  Fleetwood Enterprises, Inc. ("Fleetwood") designed and manufactured the trailer at issue in these cases, which was equipped with a gas stove manufactured by Maytag Corporation ("Maytag").  FEMA awarded a contract to Fluor Corporation ("Fluor") to inspect the trailers, install them on-site, and explain the trailers' functions to occupants.  The parties have recently learned, however, that Fluor entered into a subcontract with MMR Constructors, Inc. ("MMR"), which provided that MMR would be responsible for the actual transportation, installation, and inspection of certain trailers, and for acquainting occupants with the trailers and their appliances.

On or about August 22, 2006, Ms. Joseph met an MMR employee at her FEMA trailer in New Orleans.  The MMR representative explained the trailer's functions and operations to her, but allegedly had trouble getting the gas stove to work.  Several days later, on August 25, 2006, Ms. Joseph and an acquaintance, Mr. Bernard Mabry II, noticed the smell of gas as they entered her trailer.  As they approached the gas stove, the trailer exploded, injuring Ms. Joseph and

---

[1] *See* FEMA, Frequently Requested National Statistics Hurricane Katrina - One Year Later, http://www.fema.gov/hazard/hurricane/2005katrina/anniversary_factsheet.shtm.

ultimately killing Mr. Mabry.

This litigation consists of three individual cases that were filed in state court by Ms. Joseph and her children, Mr. Mabry's wife, and Mr. Mabry's surviving children (collectively, "Plaintiffs") against Fleetwood, Maytag, and Fluor (collectively, "Defendants"). The cases were removed by the Defendants, assigned the following case numbers, and subsequently consolidated in federal court: *Jean Joseph, et al. v. Fluor Corporation, et al.*, Civil Action No. 07-516 (*Joseph*); *Vernadine Mabry v. Fleetwood Enterprises, Inc., et al.*, Civil Action No. 07-628 (*Mabry I*); and *Bernard Mabry, III, et al. v. Fluor Corporation, et al.*, Civil Action No. 07-1270 (*Mabry II*).

The *Joseph* case was removed on January 26, 2007, and the *Mabry I* case was removed on February 7, 2007, both solely on the basis of diversity jurisdiction, 28 U.S.C. § 1332. *Mabry II* was removed on March 13, 2007, also on the basis of diversity jurisdiction. But the notice of removal in *Mabry II* contends that, alternatively, removal is appropriate pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). There is no dispute that these cases were properly removed, because complete diversity exists between the parties.[2]

## II.    PRESENT MOTIONS

The Plaintiffs now seek to amend their complaints to add claims against various non-diverse defendants. First, the plaintiffs in *Joseph* have filed a motion for leave to add Derrian Green as a defendant.[3] Mr. Green appears to be a FEMA employee that signed a "unit inspection

---

[2] The Plaintiffs are citizens of Louisiana and the Defendants are Delaware corporations.

[3] The Court inadvertently granted this motion on February 7, 2007. The motion for leave mistakenly represented that the amendment would add two additional party plaintiffs when, in fact, the amendment added Mr. Green, a non-diverse party, as a defendant. On March 19, 2007,

report" found in Ms. Joseph's trailer. Second, the plaintiffs in *Joseph* also seek leave to add MMR as a defendant, and the plaintiffs in *Mabry I* and *Mabry II* seek leave to add claims against MMR and Keith McLin, an employee of MMR believed to be the representative that met with Ms. Joseph on August 22, 2006.[4]

All of these additional parties are citizens of Louisiana and their addition to this litigation would destroy the Court's diversity jurisdiction. Accordingly, the Plaintiffs argue that these cases should be remanded to state court if the amendments are allowed. While the Defendants do not object to the amendments, they do oppose remand, contending that (1) removal was also proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); (2) federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, because the Plaintiffs make veiled claims under the National Manufactured Housing Construction Safety and Standards Act ("NMHCSSA"), 42 U.S.C. §§ 5401-5426; and (3) the addition of Mr. Green as a defendant will confer federal jurisdiction in these cases under 28 U.S.C. § 1346(b)(1).

## III.   LAW & ANALYSIS

### A.   Proposed Amendments

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). But "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit

---

the Court met with the parties and vacated its Order granting this motion for leave, allowed the plaintiffs to correct the motion, and set the matter for contradictory hearing. *See* Rec. Doc. 32.

[4] In addition, the Plaintiffs seek leave to make various corrections and/or substitutions to ensure that the proper corporate entities are identified as defendants. These proposed clerical amendments are unopposed and will be allowed.

4

joinder and remand the action to State Court." 28 U.S.C. § 1447(e); *see also Cobb v. Delta Exports, Inc.*, 186 F.3d 675 (5th Cir. 1999). Indeed, when a proposed amendment would destroy the Court's subject matter jurisdiction, the Court must scrutinize the "amendment more closely than an ordinary amendment." *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). To determine whether equity favors the proposed amendments in this case, the Court must consider "(1) the extent to which the purpose of the amendment is to defeat diversity jurisdiction, (2) whether the plaintiff has been diligent in requesting an amendment, (3) whether the plaintiff will be prejudiced if the amendment is denied, and (4) any other factors bearing on the equities." *Stewart v. Marriott Courtyard*, No. 03-2747, 2003 WL 22883629, at *2 (E.D. La. Dec. 5, 2003) (citing *Hensgens*, 833 F.3d at 1182); *see also Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 & n.11 (5th Cir. 1991).

### *1.     Derrian Green*

The *Joseph* plaintiffs originally sought to add Derrian Green as a defendant in this litigation because his signature was affixed on a "unit inspection report" found in Ms. Joseph's trailer. *See* Ex. 1 to Pls.' Mot. to Remand (Rec. Doc. 13-3). Based upon this document, the plaintiffs originally thought that Mr. Green was an employee of Fluor and that he was the individual who showed Ms. Joseph around her trailer on August 22, 2006. As discussed below, however, it now appears that Keith McLin, an employee of MMR, was the individual that met Ms. Joseph at her trailer, not Mr. Green. Indeed, the Defendants have submitted an uncontroverted affidavit from Audrey Gray, a human resources employee of Fluor, in which she declares that Mr. Green is not an employee of Fluor. *See* Ex. 3 to Fluor's Mem. in Opp'n to Pls.' Mot. to Remand (Rec. Doc. 72-4). Rather, it appears to the Court that Mr. Green is actually an

employee of FEMA.  Mr. Green signed the "unit inspection report" in the box reserved for the "FEMA Rep," not in either of two boxes reserved for "Contractors."  In addition, the Defendants have submitted an uncontroverted affidavit from Robert Funkhouser, a Fluor employee who manages the company's relationship with FEMA, in which he declares that the "unit inspection report" signed by Mr. Green is a "90-13" form typically filled out by FEMA representatives when trailers arrive in local staging yards.  *See* Ex. 2 to Fluor's Mem. in Opp'n to Pls.' Mot. to Remand (Rec. Doc. 72-3).

The Court notes that following a limited period of jurisdictional discovery, the *Joseph* plaintiffs have abandoned their claims against Mr. Green.  The proposed claims against Mr. Green were based on the belief that he met with Ms. Joseph on August 22, 2006.  But in a subsequent motion to amend, the *Joseph* plaintiffs have replaced those claims with identical claims against MMR and Mr. McLin.  Moreover, Mr. Green's apparent status as an employee of FEMA ensures that while the United States may be liable for actions he committed within the scope of his employment, he is personally absolutely immune from state-law tort liability for such actions.  *See* Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, §5, 102 Stat. 4563, 4564 (codified at 28 U.S.C. § 2679(b)); *see also Lunsford v. Price*, 885 F.2d 236, 237-38 (5th Cir. 1989).  Accordingly, the Court will deny the *Joseph* plaintiffs' motion for leave to add claims against Mr. Green.

### 2.     *MMR and Keith McLin*

As noted, the Plaintiffs have recently learned that MMR was the subcontractor responsible for delivering and installing Ms. Joseph's FEMA trailer on-site.  The parties have also learned that Keith McLin worked for MMR and was the inspector who visited with Ms.

Joseph prior to the accident.  *See* Ex. 2 to Pls.' Mot. to Amend Compl. (Rec. Doc. 56-4).

Although MMR and Mr. McLin are non-diverse parties, the Defendants do not object to their

addition to this litigation.  Moreover, the Court finds that equity favors allowing the Plaintiffs to

join MMR and Mr. McLin in these cases.

     Plaintiffs' counsel has only recently discovered the identity of MMR and Mr. McLin,

despite having contacted defense counsel prior to filing suit to inquire as to whether Fluor hired

a subcontractor to set up Ms. Joseph's trailer.  *See* Ex. 1 to Pls.' Mem. in Opp'n to Defs.' Mot.

for Recons. (Rec. Doc. 31-2).  Accordingly, the Court finds that the Plaintiffs have been diligent

in requesting these amendments and do not merely seek to destroy the Court's diversity

jurisdiction.  While it is technically immaterial, *see Cobb*, 186 F.3d at 680-81, the Court also

notes that MMR and Mr. McLin are likely indispensable parties under Rule 19.  *See* Fed. R. Civ.

P. 19(b) ("The factors to be considered by the court include:  first, to what extent a judgment

rendered in the person's absence might be prejudicial to the person or those already parties;

second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or

other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in

the person's absence will be adequate . . . ."); *Whalen v. Carter*, 954 F.2d 1087, 1096-97 (5th

Cir. 1992) (discussing the Rule 19(b) factors).  Indeed, in light of the allegations in this case,

"considerations of cost, judicial efficiency and possible inconsistency of results militate in favor

of not requiring plaintiff[s] to prosecute two separate claims in two forums when both arise from

the same set of facts and circumstances."  *Deliberto v. Wyndham Canal Place, Inc.*, No. 03-

3271, 2004 WL 1290774, at *4 (E.D. La. June 10, 2004) (allowing joinder of a non-diverse party

in somewhat similar circumstances).  Accordingly, the Court will grant the Plaintiffs' motions

for leave to add claims against MMR and Mr. McLin, despite the fact that these amendments will destroy the Court's diversity jurisdiction.

### B.     Alternative Theories of Federal Jurisdiction

Although complete diversity no longer exists, the Defendants argue that these cases should not be remanded because:  (1) removal was also proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1); and (2) federal question jurisdiction exists pursuant to 28 U.S.C. § 1331, because the Plaintiffs make veiled federal claims under the National Manufactured Housing Construction Safety and Standards Act ("NMHCSSA"), 42 U.S.C. §§ 5401-5426.[5]  For the following reasons, the Court finds that both arguments lack merit and that federal jurisdiction is not conferred in these cases.[6]

### 1.     *Federal Officer Removal Statute*

The Defendants argue that federal jurisdiction exists pursuant to the federal officer removal statute, which provides in pertinent part:

> (a)  A civil action . . . commenced in a State Court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1)  The United States . . . or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . .

28 U.S.C. § 1442(a)(1).  The purpose of this statute is to provide a federal forum in cases where

---

[5] In light of the Court's conclusion with respect to Derrian Green, the Defendants' argument that federal jurisdiction exists under 28 U.S.C. § 1346(b)(1) will not be addressed.

[6] Accordingly, the Court will not examine the implications of the Defendants having only asserted the federal officer removal statute in the *Mabry II* notice of removal, nor address any other procedural arguments in support of remand.

federal officials are entitled to raise a defense arising out of their official duties. *See Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Though generally remand to state court is favored when removal jurisdiction is questionable, removal jurisdiction under the federal officer removal statute must be broadly construed. *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Indeed, the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction. *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992).[7]

The Defendants contend that they are "person[s] acting under" an agency of the United States, namely FEMA, and thus are entitled to a federal forum in these cases. *See* 28 U.S.C. § 1442(a)(1). The federal officer removal statute only confers jurisdiction here if at least one of the Defendants is (1) a "person," (2) that acted under color of federal authority when committing the allegedly tortious conduct, and (3) can assert a colorable federal defense. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) (applying three-part test elucidated by the United States Supreme Court in *Mesa v. California*, 489 U.S. 121 (1989)). When a private entity invokes § 1442(a)(1), it must "demonstrate that a federal officer has direct and detailed control over it." *Kaye v. Sw. Airlines Co.*, No. 05-450, 2005 WL 2074327, at *3 (N.D. Tex. Aug. 29, 2005) (citing *Winters*, 149 F.3d at 399-400 and 16 James Wm. Moore et al.,

---

[7] The United States Supreme Court recently discussed the purposes behind § 1442(a)(1) in *Watson v. Philip Morris Companies, Inc.*, 551 U.S. ___, 2007 WL 11660910 (June 11, 2007). The Supreme Court noted that the federal officer removal statute's "basic purpose is to protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting . . . within the scope of their authority." *Id.* at *6 (internal quotations omitted).

*Moore's Federal Practice* § 107.15(1)(b)(ii) (3d ed. 2005)).[8]

In the present cases, the parties do not dispute that the Defendants are "persons" for purposes of the statute.  It also appears that the Defendants may have a colorable claim to a government contractor defense as articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988).  *See, e.g., Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 & n.4 (S.D. Miss. 1994) ("The court would emphasize that defendants are not required to show that their federal defense is meritorious in order to satisfy [§ 1442(a)(1)].").  Questions remain, however, whether any of the Defendants acted "pursuant to a federal officer's directions" and whether "a casual nexus" exists "between the defendant[s'] action under color of federal office and the plaintiff[s'] claims." *Winters*, 149 F.3d at 398.  This determination depends on "the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit." *Guillory*, 872 F. Supp. at 346 (internal citation omitted).[9]

This Court recently examined the federal officer removal statute in *Preston v. Tenet*

---

[8] The Supreme Court's recent decision in *Watson* also interpreted the "acting under" language of § 1442(a)(1).  The Court read "acting under" to require "a relation to one holding a superior position or office," one which "typically involves subjection, guidance, or control." 2007 WL 1660910, at *7 (internal citations omitted).  Indeed, the Court stated that "the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.*  The Court ultimately held that "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.*  However, as "private contracting" was not at issue in *Watson*, the Court did not consider "whether and when particular circumstances may enable private contractors to invoke the statute." *Id.* at *8.

[9] To the extent that the Defendants rely on statements in *Lalonde v. Delta Field Erection*, No. 96-3244, 1998 WL 34301466 (M.D. La. Aug. 6, 1998), that conflict with these requirements, such reliance is misplaced.

*Healthsystem Memorial Medical Center, Inc.*, 463 F. Supp. 2d 583, 588-90 (E.D. La. 2006).  In that case, the Court rejected the defendant's argument that FEMA exercised "direct and detailed control" over the evacuation operations at local hospitals in the days following Hurricane Katrina, and thus found that § 1442(a)(1) did not confer federal jurisdiction.  *Id.* at 590.  While the facts of the instant cases are by no means identical to those in *Preston*, the Court nevertheless finds that FEMA has not exercised the requisite degree of control over these Defendants sufficient to invoke the federal officer removal statute.

In support of their argument, the Defendants have submitted a document entitled "FEMA Model Travel Trailer Procurement Specifications."[10]  But the document confirms that FEMA does not exercise any significant degree of control over the manufacturing of travel trailers:

> Travel trailers being procured under this contract are for the purpose of providing temporary housing.  The units are subjected to continuous road travel, multiple installations and deactivations, and various weather conditions.  The standards shall not be considered restrictive in that the supplier may provide "equal or better" units considering that the competitive price and delivery requirements can be met.
>
> The construction and outfitting standards identify minimum square footage of living space, floor plan configuration, finishes, furnishing and environmental living conditions necessary to provide emergency housing for disaster relief operations. All exterior openings such as windows, doors, drain pipes, etc. will be caulked with a clear, non-hardening weatherproof sealant to prevent air and moisture penetration.
>
> The units shall meet industry standards except where identified.  These units will not include awnings, stereos, holding tanks, and/or any optional accessories.

*See* Ex. B to the Defs.' Opp'n to the Pls.' Mot. to Remand (Rec. Doc. 68-3).  It goes on to briefly discuss "quality of construction" requirements:

---

[10] FEMA actually contracted with Morgan Building and Spas, Inc., which in turn subcontracted with Fleetwood for the procurement of travel trailers and forwarded this document to Fleetwood.  FEMA's specification sheet was generated in 2004, but the same specifications apparently applied to travel trailers procured following Hurricane Katrina.

> The specifications establish the minimum standards for travel trailer construction and outfitting to meet FEMA contract requirements. This specification does not constitute any expressed or implied deviation or waiver of any requirement of the U.S. regulatory requirements from the governing agency. All units to include furnishings and appliances must be new. The manufacturer shall design and construct all units under this contract within a superior grade quality of workmanship.

*Id.* Far from evidencing federal control over the manufacturing process, this document reflects the reality that FEMA merely entered the market for travel trailers as would any other buyer, with certain practical and economic considerations in mind. *Cf. Winters*, 149 F.3d at 398-400 (private entity compelled to produce and deliver herbicide Agent Orange to the American government pursuant to detailed regulations under threat of criminal sanction). Although FEMA's purchase orders "establish[] some basic parameters within which [the manufacturers'] services are to be performed," *Guillory*, 872 F. Supp. at 348, it is simply not the case that private entities are entitled to a federal forum whenever litigation arises concerning products sold to the federal government.[11] "While [§ 1442(a)(1)] is to be liberally construed, it must nevertheless be interpreted 'with the highest regard for the right of the states to make and enforce their own laws in the field belonging to them under the Constitution.'" *Preston*, 463 F. Supp. 2d at 590 (quoting *Dixon v. Ga. Indigent Legal Servs., Inc.*, 388 F. Supp. 1156, 1162 (S.D. Ga. 1975)).

### 2.  *National Manufactured Housing Construction Safety and Standards Act*

Alternatively, the Defendants contend that the Plaintiffs have attempted to make a claim under the National Manufactured Housing Construction Safety and Standards Act ("NMHCSSA"), 42 U.S.C. §§ 5401-5426, and that the Court should therefore exercise federal

---

[11] Similarly, there has been no showing by the Defendants that FEMA exercised any control over Fluor's on-site inspection and installation of travel trailers.

question jurisdiction pursuant to 28 U.S.C. § 1331. Because the Plaintiffs do not expressly make such a claim in any of their complaints, the Defendants are left to argue that the Plaintiffs have "artfully plead" this claim in an effort to avoid federal jurisdiction. The Court is not persuaded.

The NMHCSSA, and associated regulations issued by the Department of Housing and Urban Development ("HUD"), set forth construction and safety standards for manufactured homes and prohibit local municipalities from imposing standards that differ from the federal standards. *See* 42 U.S.C. §§ 5401-5426; 24 C.F.R. §§ 3280-3282. While limited injunctive relief is available under the NMHCSSA, "the Act does not create a private cause of action," nor does it expressly or impliedly preempt state-law causes of action. *See Richard v. Fleetwood Enterprises, Inc.*, 4 F. Supp. 2d 650, 653-57 (E.D. Tex. 1998).[12] Thus, the Court finds that to the extent the Plaintiffs in the instant cases can be considered to have "artfully plead" violations of the NMHCSSA, such violations merely "serve[] as part of the relevant evidence of negligent conduct." *Id.* at 657. Accordingly, the Court finds that federal question jurisdiction does not exist in these cases.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that (1) the *Joseph* plaintiffs' first Motion to Amend (Rec. Doc. 7) is DENIED, (2) the *Joseph* plaintiffs' Motion to Amend a Third Time (Rec. Doc. 56) is GRANTED, (3) the *Mabry I* plaintiffs' Motion to Amend (Rec. Doc. 57) is GRANTED, and (4) the *Mabry II* plaintiffs' Motion to Amend (Rec. Doc. 58) is GRANTED.

IT IS FURTHER ORDERED that all three of the consolidated cases are hereby

---

[12] The Act does, however, preempt conflicting local zoning regulations. *See, e.g., Scurlock v. City of Lynn Haven*, 858 F.2d 1521, 1523-25 (11th Cir. 1988).

REMANDED to the Civil District Court for the Parish of Orleans, State of Louisiana, pursuant to 28 U.S.C. § 1447(e) for lack of subject matter jurisdiction.

New Orleans, Louisiana, this  18th  day of June, 2007.

_____
UNITED STATES DISTRICT JUDGE